BOHN MANUFACTURING COMPANY, Respondent. vs. HYNES, Appellant.

*October 26 — November 15, 1892.*

*Sale of chattels: Delivery: Vendor's lien: Insolvency of vendee.*

Plaintiff sold a large quantity of lumber in piles, the vendees giving their notes for the purchase price, and having the right to take and ship away at any time a quantity not exceeding in value $10,000

more than they had paid in cash. The vendees became insolvent, $6,000 of their $10,000 credit being unexhausted. The lumber not shipped away by them had remained all the time in the actual possession of plaintiff. *Held*, that plaintiff might enforce its lien thereon for the unpaid purchase money, as against the vendees or attaching creditors.

APPEAL from the Circuit Court for *Ashland* County.

The action is replevin to recover a quantity of lumber. The complaint is in the usual form. The defendant answered: (1) A general denial; and (2) that he is sheriff of Ashland county and as such took the lumber in controversy, which is alleged to be the property of the firm of H. B. Nease, Son & Co., by virtue of a certain writ of attachment issued out of the circuit court of that county, in an action brought therein in which the Keystone Lumber Company is plaintiff and the said firm of H. B. Nease, Son & Co. is defendant.

In September, 1890, the plaintiff company purchased of W. R. Sutherland the lumber to be thereafter cut from certain logs at Sutherland's sawmill in Ashland. Such logs were thereafter sawed in said mill, and the lumber therefrom piled on Sutherland's dock. Plaintiff paid for the lumber, and took actual possession thereof. It remained on such dock, pursuant to an arrangement between plaintiff and Sutherland, until it was seized by the defendant under the attachment.

After such lumber was so sawed and piled, the plaintiff and the firm of H. B. Nease, Son & Co., entered into the following contract in writing:

"St. Paul, Minn., Feb. 25, 1891.

"*H. B. Nease, Son & Co., Saginaw, Mich.*— GENTLEMEN: We will sell you the stock of pine lumber now in pile in the dock of W. R. Sutherland at Ashland, known as the '90 cut, amounting to 2,240,000 feet more or less, described as follows: 25 piles of 1 & ¼ inch, 15 piles of 2-inch, 12 piles

of 1-inch selects, 38 piles of 1-inch common, at the rate of $18.00 per M. feet; terms, 90 days from date, without interest; the whole amount to be settled for in paper due in 90 days from this date; any overtime to be settled for at 7 per cent. interest; all loading and shipping to be done at your expense; provided, that at any time you desire to ship lumber to exceed $10,000 in value, such excess to be paid us in cash, and indorsed on notes; our intention being to give you a credit line at any time not to exceed $10,000. Any money paid us in advance of maturity of paper, you to have the benefit of the interest at the rate of 7 per cent. for the unexpired time.  Yours, respectfully,

"BOHN MANUFACTURING COMPANY,

"Accepted,                              G. W. BOHN, Secretary.

"H. B. NEASE, SON & COMPANY."

By further agreement, not reduced to writing, the parties to the above contract stipulated that the lumber should be inspected and measured by one Rose when shipped.

The firm gave its notes for the lumber pursuant to the estimated quantity thereof in the agreement, and on June 24, 1891, $5,000 of such notes became due and were protested for nonpayment, and ever since that date the firm has been insolvent.  Before that time the firm had shipped $16,000 worth of the lumber at the contract price, and had paid on account thereof, or on notes given therefor, in cash, $12,000.  The plaintiff thereupon refused to allow any more of the lumber to be shipped by the purchaser, and no more was shipped.  No further payments were made upon the contract.  Other notes so given for the price of the lumber, to a large amount, were also protested for nonpayment as they became due.

The action of the Keystone Lumber Company against the firm of H. B. Nease, Son & Co. was commenced July 20, 1891, and the attachment was issued and the lumber levied upon by the defendant sheriff on the same day.

At the close of the trial the circuit court directed the jury to return a verdict for the plaintiff, and the same, in due form, was returned accordingly. A motion by defendant for a new trial was denied, and judgment rendered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins*. They contended, *inter alia*, that the goods were sold on credit, and as soon as the notes were given and accepted the right of property vested at once in the vendees, and they were immediately entitled to the possession. *Leonard v. Davis*, 1 Black, 476, 483; *Sewell v. Eaton*, 6 Wis. 490; *Morrow v. Delaney*, 41 id. 149; *Pratt v. Peck*, 70 id. 620; *Thayer v. Davis*, 75 id. 205. When the purchasers went on shipping the lumber, they in effect took actual possession of the lumber, and title and possession vested in them. *Cook v. Van Horne*, 76 Wis. 520; *Jenkinson v. Monroe Bros.* 61 Mich. 454. In order that conditions may be of any effect as to third parties, the contract of sale must be filed. R. S. sec. 2317; *Williams v. Porter*, 41 Wis. 422; *Wadleigh v. Buckingham*, 80 id. 230.

For the respondent there was a brief by *Lewis & Hallam* and *J. J. Miles*, and oral argument by *Mr. Miles* and *Mr. O. B. Lewis*.

LYON, C. J. There is no ambiguity in the written agreement between plaintiff and the firm of H. B. Nease, Son & Co., dated February 25, 1891, for the sale and purchase of the lumber in controversy. Under such agreement the firm was entitled to receive $10,000 worth of the lumber on giving their notes for the contract price of the whole of the lumber purchased, payable in ninety days from the date of the contract, and was entitled to ship the remainder of the lumber by paying therefor in cash at the time the same

Bohn Mfg. Co. vs. Hynes.

should be shipped; the amount so paid to be indorsed on such notes. When the defendant, the sheriff, levied the attachment of the Keystone Lumber Company upon the lumber, the purchaser had given plaintiff its notes for the estimated quantity of lumber at the contract price, had shipped $16,000 worth of it, and had paid $12,000 in cash on account thereof; hence the stipulated credit given the purchaser by the agreement lacked $6,000 of being exhausted, and by the terms of the agreement the firm was, or but for its insolvency would have been, entitled to ship $6,000 worth more of the lumber without making any further cash payment therefor.

For the purposes of this case we shall assume that the title to the lumber passed to the purchaser, under the agreement, when it executed to the plaintiff its notes for the estimated contract price thereof, and that when the attachment was levied the purchasing firm would, but for its insolvency, have had the absolute right to ship $6,000 worth of the lumber. Of course, the purchaser had the right, in any event, to ship all of the lumber on paying the unpaid contract price therefor.

But, after such agreement was entered into and $16,000 worth of the lumber had been shipped by the firm under it, the firm became insolvent. It failed in business, its notes given for the price of the lumber went to protest, and nothing has since been paid on them. Although, generally, the purchaser of goods on credit is entitled to the immediate possession of them, that right is defeated if he becomes insolvent before he obtains actual possession; and in such case the vendor may retain the goods and enforce his lien thereon for the unpaid purchase money. If, however, the purchaser obtains the actual possession of the goods, the lien is gone, notwithstanding his insolvency. It is claimed for defendant that when he levied the attachment the debtor firm was in the actual possession of the lumber.

By directing a verdict for plaintiff the circuit court necessarily held that the undisputed evidence proved that the plaintiff was then in the actual possession of the lumber. The controlling question is, Was such ruling correct? The proof is that the firm of H. B. Nease, Son & Co. never exercised any control over the mass of the lumber. The same remained on Sutherland's dock, under an agreement between the latter and plaintiff, to which the purchasing firm never became a party, and in which they never acquired any interest. The lumber which was shipped was delivered to the purchaser for shipment by plaintiff's agent, after being inspected and measured by the person agreed upon for that purpose by plaintiff and the purchaser. Such agent was constantly in charge of the lumber on the dock, and no one else interfered with it, or attempted to do so, until the sheriff seized it under the attachment. Before such seizure, and after the purchaser became insolvent, such agent, acting under the special direction of plaintiff, refused to deliver to the purchaser any more lumber to be shipped, and sent a vessel away empty which the purchaser had sent to Ashland for a cargo of the lumber. Such agent was also present, in charge of the lumber, when the sheriff levied the attachment upon it, and objected to the proceeding. In all this the purchaser acquiesced without objection, and, after the attachment was levied, joined in a rescission of the agreement of February 25, 1891, for the sale and purchase of the lumber. The above facts are proved by the undisputed testimony, and we think they show conclusively that the plaintiff retained the actual possession of the lumber, and hence was in a position to assert and enforce a lien thereon for the unpaid purchase money, not only against the purchaser, but against the attaching creditor and the sheriff, who represents such creditor.

Authorities to sustain the legal propositions herein stated are very numerous and uniform. A full and satisfactory

statement and discussion of those propositions may be found in Benj. Sales (Bennett's Am. ed. 1888), bk. 5, pt. 1, ch. 2, §§ 768–774. *Arnold v. Delano*, 4 Cush. 33, the opinion in which was written by Chief Justice Shaw, is a very instructive case on the same subject. We conclude that the court properly directed a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.